<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LOUIS LONGO, | |
| Plaintiff, | |
| | Civil Case No. 14-1204 (FSH) |
| v. | |
| | **<u>OPINION & ORDER</u>** |
| PURDUE PHARMA, L.P. and CHRISTIE WILHELM, | |
| | Date: June 19, 2014 |
| Defendants. | |

**<u>HOCHBERG, District Judge:</u>**

This matter comes before the Court upon Defendant Purdue Pharma, L.P.'s ("Purdue") and Christie Wilhelm's ("Wilhelm") motion to dismiss the amended complaint in this matter pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 23.) In response, Louis Longo ("Longo" or "Plaintiff") has filed an opposition and cross motion to file a second amended complaint. (Dkt. Nos. 26, 27 & 28.)

Longo filed this suit against Purdue and Wilhelm on January 23, 2014 in New Jersey state court. On February 24, 2014, Purdue and Wilhelm removed this matter to federal court on the basis of diversity jurisdiction. Longo filed an amended complaint on April 15, 2014. (Dkt. No. 18.) The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

I.      BACKGROUND[1]

Purdue sells pharmaceuticals to medical professionals.  As of 2012, Longo was working as a pharmaceutical representative for Purdue.  According to the complaint, Wilhelm, Longo's supervisor, made disparaging remarks about him during a 2012 regional meeting.  Longo also alleges that Wilhelm discussed her sexual history with him on a regular basis and asked if he would be receptive to her "sexual aggressiveness."  Wilhelm also allegedly sought information about Plaintiff's sex life.

Wilhelm then allegedly tried to start a sexual relationship with Plaintiff.  Plaintiff, who is married with children, declined Wilhelm's advances.  Longo alleges that as a result of his refusal, Wilhelm recommended that he be terminated for failing to pass an examination.  Thereafter, Purdue terminated Longo.  Longo, through his attorney, reported Wilhelm's conduct to Purdue.

Longo brings this suit against Purdue and Wilhelm alleging that Defendants violated the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5-1, *et seq*., created a hostile work environment, breached a contract by violating Purdue's employee handbook,[2] violated the covenant of good faith and fair dealing, and interfered with his anticipated economic benefits by terminating him.

---

[1] These facts are taken from Plaintiff's amended complaint (Dkt. No. 18), unless otherwise noted.

[2] Specifically, Longo alleges that the manual created a contract between himself and Defendants. Longo also alleges that "[t]he written manual created an obligation that the Defendants agree to abide by those written policies and also expected the Plaintiff to abide by those written policies." According to Plaintiff's opposition papers, Defendants allegedly breached that contract by failing to comply with the terms and conditions of the manual by improperly terminating Longo without progressive discipline.

## II.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis.  "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a 'document *integral to or explicitly* relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted) (emphasis in original).

### III.    DISCUSSION

Defendants move to dismiss counts one through five of Plaintiff's complaint on a number of grounds. Each count is addressed below.

#### a.  LAD — Retaliation[3]

Defendants move to dismiss this cause of action for two reasons. First, Defendants argue that Plaintiff cannot establish a *prima facie* case of retaliation. Second, Defendants argue that they had a legitimate, non-discriminatory reason for terminating Plaintiff.

"To establish a *prima facie* case of discriminatory retaliation, plaintiffs must demonstrate that: (1) they engaged in a protected activity known by the employer; (2) ***thereafter*** their employer unlawfully retaliated against them; and (3) their participation in the protected activity caused the retaliation." *Craig v. Suburban Cablevision, Inc.*, 140 N.J. 623, 629-30 (1995) (emphasis added). Plaintiff argues that there is no requirement that the alleged retaliation occur after the protected activity but fails to provide any legal citation for that proposition. Moreover, *Craig* states that the alleged retaliation occurs after the protected activity.

Defendants argue that Plaintiff cannot establish a *prima facie* case of retaliation under LAD because he was terminated prior to complaining about Wilhelm's actions. Here, based on the facts pled in the complaint, Plaintiff has failed to articulate a *prima facie* case of retaliation. As noted in *Craig*, retaliation under LAD requires that the retaliation occur after the protected activity. This case does not meet this criterion because Plaintiff was terminated by Purdue and then he complained of Wilhelm's actions to human resources. It is clear that Plaintiff's alleged

---

[3] Both employers and supervisory employees can be liable for retaliation. *Cortes v. Univ. of Med. & Dentistry of New Jersey*, 391 F. Supp. 2d 298, 314 (D.N.J. 2005).

protected activity (*i.e.*, reporting Wilhelm's actions) did not cause the adverse employment action (*i.e.*, termination).[4] Plaintiff also argues that Purdue's failure to investigate Wilhelm was an adverse employment action. (Dkt. No. 28 at 12.) But failing to investigate allegations of harassment after termination has already occurred is not an adverse employment action (retaliation) caused by a protected activity.[5] To the extent Plaintiff has asserted a retaliation claim, it is dismissed.

Defendants' second argument—that they had a legitimate non-discriminatory reason for terminating Plaintiff, *i.e.*, Plaintiff failing a test—is inappropriate to resolve on a motion to dismiss in this case. Plaintiff argues that Defendants' reason is a pretext. Defendants' argument could be rejected by a reasonable juror based on the allegations in the complaint and given the standard of review on a motion to dismiss.

### b. LAD — Hostile Work Environment

Defendants move to dismiss Plaintiff's hostile work environment claim for two reasons. First, they argue he cannot establish a *prima facie* case of hostile work environment. Second,

---

[4] Nor is this a case where Plaintiff alleges that the employer terminated him in anticipation of a protected activity. There are no allegations that the employer knew of any anticipated protected action by Plaintiff and fired him to prevent such an action. *See Romero v. Allstate Ins. Co.*, Civ. No. 01-3894, 2014 WL 981520, at *15 (E.D. Pa. Mar. 13, 2014). In any event, so-called "anticipatory" or "preemptive" retaliation has not been recognized as a viable claim under LAD by any New Jersey court.

[5] Plaintiff's allegation, *i.e.*, that Wilhelm "retaliated against him" because he refused her sexual advances, does not support a NJ LAD retaliation claim because "retaliation" claims refer to retaliation caused by a ***protected activity***, not "retaliation" triggered by anger over a person declining sexual advances. That is not to say that harassment followed by termination does not fall within LAD. Such events might give rise to a "*quid pro quo*" claim or hostile work environment claim, as discussed below. Plaintiff's proffered retaliation claim in his second amended complaint suffers from the same defect. (*See*, *e.g.*, Dkt. No. 26-6, Count Seven, ¶¶ 4 ("Plaintiff was terminated for refusing to participate in an extra-marital affair with Defendant Wilhelm."), 13, 14.)

Defendants argue that they are entitled to the affirmative defense outlined in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

"Claims of sexual harassment under the LAD normally fall into two categories: 1) '*quid pro quo*,' involving express or implied threats by the employer that the employee will suffer adverse employment consequences if he or she refuses to submit to the employer's sexual demands; or 2) hostile work environment, in which the employer or other employees harass an employee because of his or her gender to such an extent that the workplace becomes hostile." *Entrot v. BASF Corp.*, 359 N.J. Super. 162, 171 (App. Div. 2003) (citing *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 601 (1993)).

As explained by the New Jersey Supreme Court:

> To state a claim for hostile work environment sexual harassment, a [male] plaintiff must allege conduct that occurred because of [his] sex and that a reasonable [man] would consider sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment. For the purposes of establishing and examining a cause of action, the test can be broken down into four prongs: the complained-of conduct (1) would not have occurred *but for* the employee's gender; and it was (2*) severe or pervasive* enough to make a (3) *reasonable* [man] believe that (4) the conditions of employment are altered and the *working environment is hostile or abusive*.

*Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 603-04 (1993) (emphasis in original). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotation marks omitted). "Whether conduct is 'severe or pervasive' requires an assessment of the totality of the relevant circumstances, which involves examination of (1) the frequency of all the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4)

whether it unreasonably interferes with an employee's work performance." *Godfrey v. Princeton Theological Seminary*, 196 N.J. 178, 196 (2008) (internal citations and quotation marks omitted).

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807. If no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages.[6] *Id*. The defense has two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id*. at 808.

Plaintiff has established a *prima facie* claim of hostile work environment. Plaintiff alleges that Wilhelm—his supervisor—discussed her sex life with him and inappropriately propositioned him for sex knowing he was married. Plaintiff alleges that these conversations took place 3-4 times per week. After Plaintiff rejected Wilhelm's advances, he alleges that she recommended him for termination. This is enough to meet the threshold to survive a motion to dismiss.[7] *Phillips*, 515 F.3d at 234 ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability

---

[6] The same affirmative defense is outlined in *Burlington Indus., Inc. v. Ellerth*. *Ellerth*, 524 U.S. at 765.

[7] Defendants also argue that Plaintiff did not plead that the alleged harassment was because of his sex. The Court disagrees because it is implicit in the allegations that Wilhelm propositioned Plaintiff and discussed her sex life because he is male. Indeed, Plaintiff alleges that Wilhelm asked him about his sex life because of his age and gender. (Dkt. No. 18, ¶¶ 7-10.)

requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."). No doubt these claims will be further tested at the summary judgment stage.

Nor does Defendants' invocation of the *Ellerth-Faragher* affirmative defense require the dismissal of this case. As this point, based on the allegations in the complaint, a reasonable juror could reject Defendants' assertion of the affirmative defense either because Plaintiff invoked the preventative measures offered by Purdue within a reasonable time period after the alleged harassment or because the harassment ended with a tangible employment action. The Court denies Defendants' motion to dismiss the hostile work environment claim on this ground.

### c. Breach of Contract & Covenant of Good Faith and Fair Dealing

Defendants move to dismiss Plaintiff's breach of contract and covenant of good faith and fair dealing claims arguing that the employee manual is not an enforceable contract and that the claims are duplicative of Longo's LAD claims.[8]

"In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise." *Witkowski v. Thomas J. Lipton Inc.,* 136 N.J. 385, 397 (1994) (internal citations omitted). Nonetheless, New Jersey recognizes a cause of action for breach of an implied contract against employers for violating an implied promise in an employee handbook or

---

[8] Neither Plaintiff's amended complaint nor his proposed second amended complaint allege that his employment offer letter created an enforceable contract. Instead, Plaintiff's complaints explicitly rely on Purdue's employee handbook as the basis for a contract claim. Because the allegations related to the offer letter are outside of Plaintiff's complaints, he cannot rely on them in opposing a motion to dismiss. The Court notes that the employment letter also contains a disclaimer noting that Plaintiff's employment would be "at will" and that the letter was not an employment contract. (Dkt. No. 23-3, Ex. C.)

8

manual. *Woolley v. Hoffmann–La Roche, Inc.*, 99 N.J. 284 (1985), *modified on other grounds*, 101 N.J. 10 (1985).  In *Woolley*, the New Jersey Supreme Court held that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment . . . would otherwise be terminable at will." *Id*. at 285-86.

In *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401 (1994), the New Jersey Supreme Court set forth the standard an employer must adhere to in order to effectively disclaim the implication that a handbook or manual creates an implied promise.  First, the disclaimer must contain an "appropriate statement" in straightforward terms that does not contain "confusing legalese." *Id*. at 414.  The language of the disclaimer must be "such that no one could reasonably have thought [the manual] was intended to create legally binding obligations." *Id*. at 413.  Second, the disclaimer must be in a "very prominent position." *Id*. at 415.  To satisfy this requirement, the disclaimer "must be separated from or set off in a way to attract attention." *Id*.  However, "prominence can be satisfied in a variety of settings, and [] no single distinctive feature is essential *per se* to make a disclaimer conspicuous." *Id*. at 416.  The conspicuousness of a disclaimer is determined a matter of law. *Id*. ("We are also satisfied that when the facts surrounding the content and placement of a disclaimer are themselves clear and uncontroverted, as in this case, the effectiveness of a disclaimer can be resolved by the court as a question of law. ***Conspicuousness will always be a matter of law***.") (emphasis added).

The Court has reviewed the disclaimers set forth in Purdue's employee manual.[9]  Plaintiff does not dispute that the language of the manual's disclaimer contains appropriate language.

---

[9] The Court may rely on this document at the motion to dismiss stage as it is explicitly relied upon in Plaintiff's amended complaint and both parties agree that it is authentic. *Burlington*, 114 F.3d at 1426.

Nor could he as the language is straightforward and does not contain confusing legalese. (*See*, *e.g.*, Dkt. Nos. 26-4 and 26-5 at page 1 of the manual ("All employees of the Company are employed on an 'at will' basis, which means that both employees and the Company have the right to terminate employment at any time, for any reason or no reason, with or without cause and with or without notice.").) The disclaimer also specifically states that:

> Nothing in this Manual, or any other Human Resources document, including benefit plan descriptions, creates a promise of continued employment. This Manual is not intended to create, nor should it be construed as, a contract for employment. Neither this Manual nor any other Company practice or communication creates an employment contract, term or obligation of any kind on the part of the Company.

*Id*.

The disclaimer is also in a "prominent position" as required by *Woolley* and its progeny. The disclaimer appears on the first page of substantive text in the manual and can be found under the heading "**POLICY MANUAL DISCLAIMER,**" which is in capital letters and bolded. (*Id*.) As a result, the disclaimers are in a prominent position within the manual and are set off from the rest of the main text. The very next page of the manual contains an "**Employee Acknowledgement**" form—its title bolded and underlined. This form also contains an acknowledgment that employment is on an "at will" basis using similar language as the disclaimer. (*Id*. at page 2 of the manual.) Other courts have dismissed breach of contract claims where similar disclaimers were used in employee manuals. *See*, *e.g.*, *Torres v. Riverstone Residential*, Civ. No. 10-79, 2011 WL 4056209, at \*7-\*8 (D.N.J. Sept. 12, 2011); *Normand v. Goodyear Tire & Rubber Co.*, Civ. No. 05-1880, 2005 WL 1657032, at \*6 (D.N.J. July 13, 2005). Based on the analysis above, the Court finds that the disclaimers are appropriate and effective. Therefore, the Court dismisses Plaintiff's breach of contract claim.

In his papers, Plaintiff argues that his breach of contract claim is based on Defendants' failure to provide him with progressive discipline. (Dkt. No. 28-1 at 27-28.) Aside from the effective disclaimers, Plaintiff's argument fails for three additional reasons. First, Plaintiff cannot rely on allegations outside of his complaint to oppose a motion to dismiss, and Plaintiff's complaints do not mention any promise of progressive discipline. Second, even if Plaintiff could rely on allegations outside of his complaints, Plaintiff fails to identify any portion of the employee manual that promises progressive discipline. Third, the discipline portion of the employee manual at issue states that "[n]either this Manual, nor the Company's past treatment of violations of the Company's policies or procedures or accepted standards of employee conduct, should be construed as a promise or indicator of specific treatment in a given situation." (Dkt. No. 26-4 at page 20 of the manual.) The manual also states that "[t]he Company will address violations on an individual basis." (*Id.*) Therefore, the manual lacks any basis for the alleged promised "progressive discipline." *See Snee v. Carter-Wallace, Inc.*, Civ. No. 00-1317, 2001 WL 849734, at *4 (E.D. Pa. July 2, 2001) (citing *Radwan v. Beecham Labs., a Div. of Beecham, Inc.*, 850 F.2d 147, 151 (3d Cir. 1988)). The Court dismisses Plaintiff's breach of contract claim on these separate and independents grounds.

Plaintiff's breach of the implied covenant of good faith and fair dealing claim is derivative of his breach of contract claim. Therefore, because Plaintiff's breach of contract claim is dismissed, Plaintiff's implied covenant of good faith and fair dealing claim is also dismissed. *See Wade v. Kessler Inst.*, 172 N.J. 327, 345 (2002) (holding that a contract must serve as the predicate for a breach of the implied covenant of good faith and fair dealing); *Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 (D.N.J. 2008).

### d.  Tortious Interference with Prospective Economic Advantage

Defendants also move to dismiss Plaintiff's tortious interference claim for two reasons. First, Defendants argue that a tortious interference claim can only go forward against a person or entity that is not a party to the relationship. Second, Defendants argue that Plaintiff cannot establish that he had a protectable economic or contractual relationship that was interfered with.

"Under New Jersey law, the five elements of a claim of tortious interference with a prospective business relationship are: (1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir. 1992).

"The tort requires meddling into the affairs of another. Hence, the claim must be directed against a defendant who is not a party to the relationship giving rise to the economic interest." *Cataldo v. Moses*, A-4943-04T3, 2006 WL 1450382, at *10 (N.J. Super. Ct. App. Div. May 26, 2006) (internal citations and quotation marks omitted); *see also Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 752 (1989) ("More significant is our determination that it is 'fundamental' to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship."). However, a co-employee can be liable for tortious interference with prospective economic advantage when they "act[], not on behalf of their employer, but for their own personal interests and motives." *See Cataldo*, 2006 WL 1450382, at *10-*11; *see also Jenkins v. Region Nine Hous. Corp.*, 306 N.J. Super. 258, 264 (App. Div. 1997) ("[T]he motion judge recognized that an at-will employee has a protectable interest in her job and that a co-employee's malicious

interference with that employment relationship is actionable."); *DeJoy v. Comcast Cable Commc'ns Inc.*, 941 F. Supp. 468, 477 (D.N.J. 1996); *Obendorfer v. Gitano Grp., Inc.*, 838 F. Supp. 950, 956 n.2 (D.N.J. 1993).

At this stage, Plaintiff has alleged enough facts to go forward on a tortious interference claim with respect to Wilhelm. In other words, Plaintiff has pled a reasonable expectation with respect to his job,[10] Wilhelm's intentional interference with that expectancy due to personal motives, his anticipated benefit absent Wilhelm's actions, and damages in the form of lost wages. But because Purdue cannot be liable for tortious interference in a relationship between itself and Plaintiff, the tortious interference claim against Purdue is dismissed.

### e. Wilhelm's Individual Liability Under LAD

Defendants argue that Wilhelm cannot be liable under LAD because there is no individual liability under LAD unless a person "aids" or "abets" a LAD violation, and Defendants assert that Wilhelm cannot aid or abet her own actions.

The Third Circuit has held that there is no individual liability for supervisors under N.J.S.A. § 10:5-12(a) of LAD. *See Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 125 (3d Cir. 1999). However, an individual may be liable under LAD if they aid or abet another's violation of LAD. *See* § 10:5-12(e); *see also Kennedy v. Chubb Grp. of Ins. Companies*, 60 F. Supp. 2d 384, 390-91 (D.N.J. 1999).

"[I]n order to hold an employee liable as an aider or abettor, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at

---

[10] Notably, even at-will employees who can be fired for no reason at all may be able state a reasonable expectation of economic benefit or advantage. *See Cataldo*, 2006 WL 1450382 at *10-*11 (noting an at-will employee had shown a reasonable expectation of continued employment as he had been employed by the state for many years).

the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (internal quotation marks omitted). In assessing whether a defendant provides "substantial assistance" to the principal violator, court consider the following factors: "(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor." *Id*.

The Third Circuit explained in *Hurley* how a harassing supervisor could be individually liable for aiding and abetting the actionable conduct of his employer when the challenged conduct is failing to stop the supervisor's own harassment: "A supervisor, under New Jersey law, has a duty to act against harassment. This duty can be violated by deliberate indifference or affirmatively harassing acts. When a supervisor flouts this duty, he subjects himself and his employer to liability." *Id*. at 126 (internal citation omitted); *see also Vazquez v. Karcher N. Am., Inc.*, Civ. No. 13-3817, 2013 WL 5592369, *4 (D.N.J. Oct. 8, 2013); *Brown-Marshall v. Roche Diagnostics Corp.*, Civ. No. 10-5984, 2013 WL 3793622, at *7 (D.N.J. July 19, 2013); *Rowan v. Hartford Plaza Ltd.*, A-0107-11T3, 2013 WL 1350095, *7-*8 (N.J. Super. Ct. App. Div. Apr. 5, 2013) (citing *Hurley* with approval and stating "[The individual defendant] cannot escape individual liability for his own allegedly egregious conduct based on a narrow construction of the 'aiding and abetting' provision of the statute."); *Poiner v. Cnty. of Middlesex*, A-2651-05T1, 2007 WL 1627033, at *10 (N.J. Super. Ct. App. Div. June 7, 2007) ("[A] jury could rationally find that Cantella substantially assisted the County in its violation of the LAD by his 'deliberate indifference' to the alleged sexual harassment of plaintiff and by his own 'affirmatively harassing acts.'").

Although there is some scattered contrary authority, the weight of authority emerging from the District of New Jersey and New Jersey state courts supports finding that a supervisory employee may be individually liable for aiding and abetting under LAD when she is the primary wrongdoer.[11] The Court denies Defendants' motion to dismiss on this ground.

### IV. PLAINTIFF'S MOTION TO AMEND

After Defendants moved to dismiss the amended complaint, Plaintiff filed an opposition to their motion and filed a cross motion to amend seeking to file a second amended complaint. Plaintiff's proposed second amended complaint seeks to: (i) add a NJ LAD retaliation claim with additional factual details and (ii) add a tortious interference with contractual relations claim.

As explained above, even considering Plaintiff's additional factual allegations, his claim for retaliation fails. Similarly, Plaintiff's attempt to add a tortious interference with contractual relations claim is futile. Such a claim fails because Plaintiff does not allege a valid underlying contract. *See Commerce Ins. Servs. V. Szczurek*, Civ. No. 05-3536, 2006 U.S. Dist. LEXIS 515, at *26 (D.N.J. Jan. 6, 2006).

### V. CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 19th day of June, 2014,

**ORDERED** that Defendants' motion to dismiss the amended complaint (Dkt. No. 23) is **GRANTED-IN-PART** and **DENIED-IN-PART**; and it is further

---

[11] The Court notes that this conclusion is in harmony with both *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563 (2008) and *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557 (2009). Both of these decisions state that a supervisor may be liable for "aiding and abetting" under NJ LAD, and neither decision directly addresses the issue of whether a supervisor may be liable for aiding and abetting under NJ LAD due to their own harassing conduct. *Cicchetti*, 194 N.J. at 594; *Leang*, 198 N.J. at 576; *see also Ivan v. Cnty. of Middlesex*, 612 F. Supp. 2d 546, 551-54 (D.N.J. 2009).

**ORDERED** that Plaintiff's LAD retaliation claim is **DISMISSED**; and it is further

**ORDERED** that Plaintiff's breach of contract claim is **DISMISSED**; and it is further

**ORDERED** that Plaintiff's breach of the covenant of good faith and fair dealing claim is **DISMISSED**; and it is further

**ORDERED** that Plaintiff's tortious interference with prospective economic advantage claim is **DISMISSED** with respect to Purdue; and it is further

**ORDERED** that, in light of the above findings, Plaintiff's request to file a second amended complaint (Dkt. No. 27) is **DENIED** as **MOOT** and/or **FUTILE**; and it is further

**ORDERED** that this matter is referred to mediation with Pamela Nadel, Esq.; an order of referral to mediation with be sent forthwith, and the parties are ordered to contact Ms. Nadel to arrange a starting date for the mediation no longer than **45 days** from the date of this opinion.

        **IT IS SO ORDERED.**

        **  /s/ Hon. Faith S. Hochberg**
        **Hon. Faith S. Hochberg, U.S.D.J.**