<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LOUIS LONGO, | : |
| Plaintiff, | : |
| v. | : Civil Case No. 14-1204 (FSH) |
| PURDUE PHARMA, L.P. and CHRISTIE WILHELM, | : **OPINION & ORDER** |
| Defendants. | : Date: August 5, 2014 |

<u>**HOCHBERG, District Judge:**</u>

This matter comes before the Court upon Plaintiff's motion for reconsideration (Dkt. No. 32) of the Court's June 19, 2014 Opinion and Order (Dkt. No. 31), which granted-in-part and denied-in-part a motion to dismiss filed by Defendants Purdue Pharma, L.P. ("Purdue") and Christie Wilhelm ("Wilhelm"); and

it appearing that a motion for reconsideration is governed by Local Civil Rule 7.1(i); and

it appearing that Local Civil Rule 7.1(i) provides for the reconsideration of an order if the motion is filed within 14 days after entry of the disputed order; and

it appearing that the purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence," *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *see also P. Shoenfeld Asset Mgmt. LLC v. Cendent Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001), *Yurecko v. Port Authority Trans-Hudson Corp.*, 279 F. Supp. 2d 606, 609 (D.N.J. 2003); and

it appearing that Local Civil Rule 7.1(i) requires that the moving party set forth "concisely the matters or controlling decisions which the party believes the Judge . . . has overlooked;" and

it appearing that "[a] party seeking reconsideration must show more than a disagreement with the Court's decision," *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990); and

it appearing that "[a] mere 'recapitulation of the cases and arguments considered by the court before rendering its original decision'" does not warrant reargument, *Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 18 F. Supp. 2d 464, 466 (D.N.J. 1998) (quoting *Carteret Savings Bank F.A. v. Shushan*, 721 F. Supp. 705, 706 (D.N.J. 1989)); and

it appearing that a court may grant a properly filed motion for reconsideration for one of three reasons: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or fact or prevent manifest injustice, *Max's Seafood Cafe, By Lou-Ann, Inc. v. Max Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *Database Am., Inc. v. Bellsouth Advertising & Publ'g. Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993) (citing *Weyerhaeuser Corp. v. Koppers Co.*, 771 F. Supp. 1406, 1419 (D. Md. 1991)); *see also Carmichael v. Everson*, 2004 U.S. Dist. Lexis 11742, at *2-3 (D.N.J. May 21, 2004); *Miletta v. United States*, Civ. No. 02-1349, 2005 WL 1318867, at *8 (D.N.J. May 27, 2005); and

it appearing that a motion for reconsideration is improper when it is used to "'ask the Court to rethink what [it] had already thought through — rightly or wrongly,'" *Ciba-Geigy Corp. v. Alza Corp.*, Civ. No. 91-5286, 1993 WL 90412, at *1 (D.N.J. March 25, 1993) (quoting *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990), *rev'd on other grounds*, 989 F.2d 635 (3d Cir. 1993); and

it appearing that because reconsideration of a judgment after its entry is an extraordinary remedy, motions to reconsider or reargue are granted "very sparingly," *Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986); and

it appearing that disagreement with the Court's initial decision as the basis for bringing a motion "should be dealt with in the normal appellate process, not on a motion for reargument," *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 163 (D.N.J. 1988); and

it appearing that (1) there has been no intervening change in controlling law; (2) plaintiff does not allege any "new evidence"; and (3) there has been no clear error of law or fact or manifest injustice;[1] and

---

[1] In the Court's opinion and order addressing Defendants' motion to dismiss, the Court dismissed Plaintiff's tortious interference with economic relations claim against Purdue and allowed the claim to proceed against Wilhelm. Plaintiff now asks for reconsideration of the Court's dismissal of his tortious interference claim against Purdue based on two cases cited in his opposition to Defendants' motion to dismiss. Plaintiff argues that *Winkler v. Hartford Acc. & Indem. Co.*, 66 N.J. Super. 22 (App. Div. 1961) and *Cappiello v. Ragen Precision Indus., Inc.*, 192 N.J. Super. 523 (N.J. Super. Ct. App. Div. 1984) are two New Jersey state court cases that should convince this Court to reinstate Plaintiff's tortious interference claim against Purdue. Plaintiff argues that *Winkler* and *Cappiello* hold that a corporation can be vicariously liable for the tortious interference of an employee if the corporation ratifies the acts of its employee.

Plaintiff's argument fails for at least three reasons. First, Plaintiff raised all of these arguments in his opposition papers, thus these arguments are a recapitulation of the arguments considered by the Court before rendering its original decision. *See Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 18 F. Supp. 2d 464, 466 (D.N.J. 1998). That an issue was not explicitly mentioned in this Court's decision does not mean it was overlooked. *Byrne v. Calastro*, 2006 WL 2506722, at *2 (D.N.J. Aug. 28, 2006). An argument may be regarded as having been considered if it is presented to the court in written submissions. *Eichorn v. AT&T Corp.*, 1999 WL 33471890, at *3 (D.N.J. Aug. 23, 1999). The Court considered these arguments, in addition to the numerous other arguments Plaintiff raised in its submission, and after careful analysis, dismissed his tortious interference claim against Purdue.

Second, both *Cappiello* and *Winkler* issued years before the New Jersey Supreme Court held that a "fundamental" aspect of tortious interference with prospective economic relations is that the claim be directed against defendants "who are not parties to the relationship." *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 752 (1989). Any holding found in *Cappiello* or *Winkler* that conflicts with *Printing Mart-Morristown* was abrogated by that New Jersey Supreme Court decision. The New Jersey Supreme Court was clear: only those who are
(Footnote continued on next page . . . )

for all of the reasons stated in the Court's Order dated June 19, 2014 and for those additional reasons stated herein,

**ACCORDINGLY**, it is on this 5th day of August, 2014,

**ORDERED** that Plaintiff's motion for reconsideration (Dkt. No. 32) is **DENIED**.

                              **IT IS SO ORDERED.**

                              **/s/ Faith S. Hochberg_____**
                              **Hon. Faith S. Hochberg, U.S.D.J.**

---

not part of the economic relationship may be held liable for tortious interference with prospective economic relations.  With respect to Purdue, Plaintiff's former employer, that holding is dispositive.

       Third, it would make little sense for liability to attach vicariously to an employer in this situation.  Here, Wilhelm can only be liable for tortious interference as a co-employee if she acts, "not on behalf of [her] employer, but for [her] own personal interests and motives." *See Cataldo v. Moses*, A-4943-04T3, 2006 WL 1450382, at *10-*11 (N.J. Super. Ct. App. Div. May 26, 2006); *see also Obendorfer v. Gitano Grp., Inc.*, 838 F. Supp. 950, 956 (D.N.J. 1993); *DeJoy v. Comcast Cable Commc'ns Inc.*, 941 F. Supp. 468, 477 (D.N.J. 1996).  On the other hand, if Wilhelm is found to have been operating within the scope of her authority, she will not be liable for tortious interference.  *See id*.  Plaintiff posits that if Wilhelm acted outside of her authority and Purdue later ratifies those actions, then Purdue can then be found liable for tortiously interfering with its own economic relations.  This conclusion directly contradicts the wealth of case law that holds that Purdue cannot tortiously interfere with its own economic relationship.  Plaintiff's theory would create an illogical system whereby an employer is liable when it approves of actions after-the-fact, but not liable when it approves the very same actions prior to their execution.